[Civ. No. 8935.   Third Dist.   Jan. 17, 1957.]

ALFRED B. FISKE, Appellant, v. STATE PERSONNEL
BOARD et al., Respondents.

James H. Phillips for Appellant.

Edmund G. Brown, Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondents.

SCHOTTKY, J.—The California Horse Racing Board took punitive action against petitioner and appellant, Alfred B. Fiske, dismissing him from his civil service position as secretary of said board. The amended notice of punitive action stated the causes of appellant's dismissal as:

(1) His inefficiency;

(2) His insubordination; and

(3) Failure of good behavior or acts during duty hours which are incompatible with or inimical to the public service within the meaning of Government Code, section 19572, subdivisions (c), (f) and (s).

Appellant filed with the State Personnel Board an answer and request for hearing on the dismissal, and following a hearing the Personnel Board rendered its findings of fact and decision sustaining the punitive action taken by the Racing Board. Thereafter appellant filed in the superior court a petition for a writ of mandate to compel the State Personnel Board to annul its decision sustaining his dismissal and to reinstate petitioner to his former civil service position. The superior court sustained the action of the Personnel Board upholding the dismissal of petitioner, and petitioner has appealed from the judgment denying said writ.

Appellant attacks all of the findings of fact of the Personnel Board, contending that said findings of fact constitute an abuse of discretion in that there is no substantial evidence to support any of them.

Preliminarily, certain well settled rules should be stated. The State Personnel Board is a constitutional agency, and as such its decisions, after hearing, will be sustained on review by the superior court when there is substantial evidence in the light of the whole record to sustain such decision. (Code Civ. Proc., § 1094.5, subd. (c) ; *Boren* v. *State Personnel Board,* 37 Cal.2d 634, 637-638 [234 P.2d 981] ; *Genser* v.

*State Personnel Board,* 112 Cal.App.2d 77, 80 [245 P.2d 1090]; *Nelson v. Department of Corrections,* 110 Cal.App.2d 331, 336 [242 P.2d 906].)

On appeal, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence to support the trial court. (*Moran v. Board of Medical Examiners,* 32 Cal.2d 301, 308-309 [196 P.2d 20]; *Genser v. State Personnel Board,* 112 Cal.App.2d 77, 81 [245 P.2d 1090].) As stated in *Genser v. State Personnel Board, supra,* 112 Cal.App.2d 77, 87, in reviewing the evidence before the Personnel Board all conflicts must be resolved in favor of the findings of the board and all legitimate and reasonable inferences indulged in to uphold their decision.

The first finding attacked by appellant is as follows:

"That on or about December 11, 1952, Alfred B. Fiske did attend and was present at a regularly scheduled Executive Session meeting of the California Horse Racing Board; that each and all of the then Commissioners of the California Horse Racing Board, namely, Dwight · Murphy, John H. Sattler and Fred W. Pabst, were present at said Executive Session meeting; that in the course of said Executive Session meeting Alfred B. Fiske openly and orally stated in substance as follows:

" '. . . I have no respect for a certain member of this Board. Change that "certain" to John H. Sattler, here, who is prejudiced in mind and in thought, and in my personal opinion, (emphasize "personal") does not belong on this Board, or to represent any honorable organization entrusted with the will and the welfare of the people of the State.'

"That at said time and place, said John H. Sattler did in substance state that he (Sattler) did not intend to reply to any alcoholic who would make such remarks.

"That immediately thereafter, at said time and place, said Alfred B. Fiske did continue to talk, and did say about said John H. Sattler, as follows:

" 'The man is incompetent; he relies on third-rate information from prejudiced sources; he is a detriment to racing; and in my opinion, I can prove by organizations identified with the track that he's been nothing but a trouble maker, a disturber and a malcontent ever since he's been on this Board.' "

Appellant did not deny that the foregoing occurred at the board meeting but endeavored to show provocation by claiming that Mr. Sattler had on prior occasions made remarks

highly detrimental to appellant, but Mr. Sattler denied having made any such statements.

There can be no question as to the sufficiency of the evidence to support the finding that the said actions and conduct of appellant constituted "failure of good behavior and acts during the duty hours which are incompatible with and inimical to the public service within the meaning of Government Code, section 19572, subdivision (s)."

Also attacked by appellant is the finding:

"That Alfred B. Fiske prepared, or caused to be prepared, the 1953-54 budget for the California Horse Racing Board, which budget was submitted to the Department of Finance on about October 24, 1952, and in which budget Alfred B. Fiske inserted, or caused to be inserted, a request for the addition of three new positions as Race Track Investigators to the Board's then existent staff of four Race Track Investigators. Said Budget also provided for the continuance of three positions classified as 'Photographer-Identifier' for 1953-54.

"On or about December 11, 1952, the California Horse Racing Board met and unanimously decided to abandon and discontinue the service of identification of horses and the position for classification of the Photographer-Identifier not later than the close of the 1952-53 fiscal year.

"Also, on or about December 11, 1952, during an Executive Session meeting of the California Horse Racing Board, at which time Alfred B. Fiske was present in his official capacity as Secretary thereof, Chairman Dwight Murphy of said Board announced substantially as follows: That the Board wished to have of record that Chief Investigator Ford was to have under his jurisdiction, in addition to himself, not more than four investigators; and that additional investigators, if any, were to be dispensed with as of June 30, 1953, or sooner. That on or about January 22, 1953, during an Executive Session of the California Horse Racing Board, at which time Alfred B. Fiske was present in his official capacity as Secretary thereof, said Board duly adopted a resolution providing for continued operation of said Board's staff of four investigators under the supervision and direction of the Board's Chief Investigator, to-wit: Mr. Ford."

Said finding then goes on to state that on February 2, 1953, appellant as secretary of the Racing Board made a voluntary appearance before an Assembly committee and without authority from the Racing Board, and contrary to the ex-

press policy of the Board to continue its staff of investigators, suggested and advocated the elimination of investigators. Said finding states further:

"Thereafter, on or about March 19, 1953, at a hearing on the revised budget of the California Horse Racing Board before the Sub-Committee of the Senate Committee on Finance, while Alfred B. Fiske was present, Dwight Murphy, in his official capacity as Chairman of the California Horse Racing Board, did testify before such Senate Sub-Committee substantially as follows:

"That the California Horse Racing Board desired to eliminate the horse identification service; that such horse identification was an obligation which should be borne by the licensed racing associations; that the cost of horse identification service was an unnecessary State expense and was not required by the Racing Act. That the Board did not need three additional Race Track Investigators; that the California Horse Racing Board believed that the retention of its present staff of Race Track Investigators was absolutely necessary.

"That immediately after Chairman Murphy testified, Alfred B. Fiske did testify before said Senate Sub-Committee in substance as follows:

"That no Race Track Investigators at all were needed by the California Horse Racing Board; and that the Rules of Racing had been changed to require racing associations to police their tracks.

"That such statement as to the Rules of Racing having been changed to require the racing associations to police their tracks was false and misleading when made and was known by Mr. Fiske to have been false and misleading when made; that in truth and in fact the Rules of Racing ever since 1943 to date hereof have required licensed racing associations to properly police their grounds."

Said finding then states other instances when appellant testified before the legislative committee in opposition to the established policy of the Racing Board.

There is ample evidence to support the above finding and the further finding that said acts and conduct of appellant "constituted ·and do constitute inefficiency, insubordination and failure of good behavior and acts which are incompatible with and inimical to the public service within the meaning of Government Code Section 19572, subdivisions (c), (f) and (s)." ·

There were a number of other findings made by the Person-

nel Board and by the court detailing other acts and conduct of appellant in not only failing to observe and carry out the policies adopted by the board but openly opposing said policies. There is ample evidence in the record to support said findings.

■ The final finding attacked by appellant states:

"That during the horse race meeting conducted at Del Mar Race Track in 1952, from on or about July 22, 1952, through September 6, 1952, both dates inclusive, and at the 1952-53 horse race meeting at Santa Anita Race Track, from on or about December 26, 1952, through March 7, 1953, both dates inclusive, and at each of said meetings, Alfred B. Fiske frequently and repeatedly did drink and consume intoxicating liquor during the duty hours.

"That the State Personnel Board found, and this Court now finds that the actions and conduct of Alfred B. Fiske hereinabove found to be true constituted and do constitute failure of good behavior and acts during the duty hours which are incompatible with and inimical to the public service within the meaning of Government Code Section 19572, subdivision (s)."

This finding is supported by the testimony of Raymond Gill, a bartender, who testified that at both of these race meetings appellant visited the bar two or three times per week and that during both of these race meetings, appellant would visit the bar once, twice, three times per day and on each visit he would take from two to four drinks of Scotch and perhaps more, depending on how long appellant stayed there. This drinking took place during the afternoon while the races actually were being conducted. This evidence was corroborated by other testimony.

By rule of the State Personnel Board, title 4, section 172 of the California Administrative Code, it is provided:

"All . . . employees in the State civil service . . . shall possess the general qualifications of . . . sobriety, . . ."

In the case of *American Cigar Co.* v. *Fabacher*, 156 La. 182 [100 So. 299, 300], the word "sober" was held to mean moderate in, or abstinent from, the use of intoxicating liquor, and it was said that "The synonyms for 'sober' are abstemious, abstinent, temperate, unintoxicated."

Also, in title 4, section 1463, Rules of the California Horse Racing Board, it is provided:

"Drinking of intoxicating liquor, by any racing official, or track employee, licensed by the board, while on duty, is

prohibited. Any person violating this rule shall be summarily relieved of his duties by the stewards and a full report made to the board, which may, in its discretion, revoke the license of such person. . . .''

It would not appear unreasonable to hold the secretary of the Racing Board, while on duty, to the same standard of conduct required of racing officials or track employees licensed by the board. Here, there is not involved just an isolated drink but a course of conduct during duty hours, and appellant is not charged with drunkenness on duty, but with frequently and repeatedly drinking during duty hours.

Appellant's defense that he possessed the power to place himself off duty, do his drinking, and then return to duty would seem to be without merit. How could the public, which comes in contact with the secretary, know in which capacity he was doing his drinking, as a civil servant on or off duty? It would appear that the acts in this finding would also constitute failure of good behavior.

The California Horse Racing Board has jurisdiction and supervision over horse racing in California and appoints a secretary whose duties are to ''keep a full and true record of all proceedings of the board, preserve at the general office all books, documents and papers of the board, prepare for service such notices and other papers as may be required of him by the board, and perform such other duties as the board may prescribe.''

It is apparent from the record that appellant misconceived the scope of his authority as secretary of the board and that he, in effect, attempted to place himself above the authority of the Racing Board. It is impossible to conceive how any board can function properly and fulfill the duties assigned to it by law if its secretary can be permitted to pursue the course of conduct that the record shows that appellant pursued. Such conduct cannot be justified by either reason or authority and fully supports the conclusion that the conduct of appellant ''constituted inefficiency, insubordination, and failure of good behavior and acts during duty hours which are incompatible with and inimical to the public service.''

No other points raised require discussion.

In view of the foregoing we conclude that the respondent State Personnel Board did not act arbitrarily, unreasonably or excessively, and did not commit any abuse of discretion in its decision; that said board's decision is supported by substantial evidence in the light of the whole record before said

board; that said board did not exceed its jurisdiction; said board proceeded in the manner required by law, and that said board's decision is supported by the findings, and the findings are supported by the evidence; that throughout the entire proceedings the petitioner was afforded a full and fair hearing.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.